Your Honor, the first case of the morning calls 10-755, People, the State of Illinois v. Mark A. Downs. On behalf of the Avalon, Mr. Bruce Kirkham, on behalf of the A.I. League, Ms. Joan Critchin. Folks, our third panel member is not here today. However, he will be listening to the argument and will rule with us on this case. Okay, we're ready to proceed. Mr. Kirkham. Yes, Your Honor. Thank you, Your Honor. May it please the court and counsel. Good morning, Your Honors. My name is Bruce Kirkham and I represent the defendant, the panel member, Mr. Mark Downs. This case brings before this court a case study in how not to conduct a critical hearing. The trial court in this case conducted what it considered to be a preliminary investigation of Mr. Downs' pro se claims of ineffective assistance of counsel by his trial counsel, Mr. Clement. But those proceedings were fundamentally flawed. First, I must note that the trial court initially got it right when they reviewed Mr. Downs' pro se claims and determined they showed possible neglect of his case by Mr. Clement. And the trial court then appointed new counsel, Mr. Haskell, to represent the defendant in subsequent critical hearing proceedings. Before he made that determination that he felt that there was neglect, had he questioned any of the parties at that point? No, he did not question any of the parties at that point. But I don't think that he was required to because one of the permissible sources of examination and inquiry for the trial court is to review the pleadings and to rely on his knowledge of the case through his conduct of the trial. So the trial judge was within his power to review the pleadings and make a determination that the claims show possible neglect of the case. And sufficiently to appoint Mr. Haskell to represent Mr. Downs in subsequent evidentiary hearings. At some point he changed his mind, correct? Yes, he did. And where did he go wrong in your opinion thereafter? Well, he went wrong when he appointed Mr. Haskell to represent Mr. Downs. And Mr. Haskell reviewed the case and filed an amended motion adopting five of Mr. Downs' pro se claims that were sufficient for evidentiary hearing. But then the trial court was reversed by this court in Rule 23, People v. Paul Gilmore. And this occurred the day before Mr. Haskell filed his amended motion. And then Mr. Haskell filed his amended motion on October 27. And then on October 28, the trial court says, I was reversed in Gilmore. I've gone through Gilmore and I found 16 points of law that I must absolutely follow according to the appellate court. I've been conducting a crankle case. I'm not going to skip any of these. So I'm going to vacate or I'm going to rescind Mr. Haskell's appointment. I'm going to set aside this amended motion where he adopted and found merit to five of Mr. Downs' claims. And said we're going to go back to square one and we're going to do a preliminary inquiry in which I will determine then whether to appoint counsel or not. There was no need to rescind Mr. Haskell's appointment. The court had already found possible neglect of Mr. Downs' case by Mr. Clement and was proceeding to promptly crankle proceedings. The court could have rescinded Haskell's appointment and said, I should have inquired of the defendant first. That would have been fine if he had just done that, wouldn't it? It would have been. And that's another problem with this case is that what the court considered to be a preliminary inquiry expanded in scope to be much more similar to a full-blown evidentiary hearing. In which Mr. Downs was required to go pro se and proceed without counsel. At the same time, while sitting at the counsel table with Mr. Clement, presented his side of the allegations. And with prosecutors offering input and commenting and ultimately offering argument on each of the points. The primary allegations were the defendant wanted to waive, correct? That was one of them? Yes. That defense counsel did not explore or do a sufficient investigation of the purported alibi? Correct. And also a failure to effectively cross-examine witnesses, correct? Yes. And were those among the areas that were identified by Mr. Haskell as potential? I know the jury waiver, that was one that he identified and wanted to pursue the alibi. There was an allegation of not letting Mr. Downs review discovery materials. That one, as a matter of law, he doesn't get to hang on to discovery materials anyway. The trial court could have ruled on that without any inquiry at all. You would agree to that, right? Yeah. But I'm just trying to recall and discuss what Mr. What was the other one? I think there was a. . . The first was the alibi. Trial counsel failed to allow the defendant to see missing pages of discovery. The jury waiver. Trial counsel made defendant sign stipulations that I wasn't allowed to read or agree with. And then there's kind of a catch. That's also a matter of trial strategy stipulations, aren't they? Well, it's trial strategy, but I don't know whether the defendant is required to sign off on those and agree to that or not. I mean, it's a way to speed things along generally by agreement, yeah. And then, like I said, there's a catch-all that incorporates some of the failure to cross-examine and so forth. In this case, he did all of that. After he came back and he said, okay, I did it wrong. Let me perform a crankle hearing. Let me conduct a crankle hearing. And he did all of that. And what he did in addition to a crankle hearing was he got some input from the state, correct? Correct. So in playing the devil's advocate and your opponent says, well, yeah, but, you know, even though he got some input from the state, it doesn't really matter because none of those claims had any legitimacy anyway or they really didn't matter. What's your response to that? And how did they, if you recall, deal with that in the Moore case? Well, the purpose of the preliminary inquiry is not to do an in-depth examination and to consider broadly factual matters. It's by nature limited to just a determination of whether the defendant's claims present a culpable claim of ineffective assistance of counsel. So even if the claims may be without merit, you still need to inquire, correct? I'm sorry, I couldn't hear you. Even if the claims may be or appear to be without merit, you still need to inquire, correct? Yes, but that inquiry can be done just as the judge did before he appointed Mr. Haskell, which is his knowledge of the case coupled with his review of the defendant's pro se claims. Or it could have been done just as it had been until he pulled the stake, is your position? Yes. I mean, up until he rescinded Mr. Haskell's appointment, he was on track. I mean, he was within his power and he did the right thing by appointing Mr. Haskell. I think it's significant to note that they have the first day of hearings where they go through the first 17 or 18 of Mr. Downey's claims. They continue it for approximately four weeks, and they come back for round two, the second of three days of his preliminary inquiry. And at that time, you know, Mr. Clement's saying, I don't agree with this. I think this is wrong. I think you misread Gilmore and are misapplying Gilmore. And you were correct and you did the right thing by appointing Mr. Haskell to protect Mr. Downey's rights. Mr. Haskell is present in the courtroom, so the defendant's going pro se, going through each of his claims one at a time, while formerly appointed counsel, who found merit to his claims, is sitting silently in the courtroom. Says, Judge, the reason that you do a preliminary inquiry, why the appellate court says you need to do a preliminary inquiry, is to prevent situations where trial judges just summarily dismiss pro se claims of ineffective assistance of counsel without any review at all. So you have that problem, but I don't want to go into the spectrum. But in this case, if you have a spectrum of preliminary inquiries, it's off the scale on the opposite end, where the court went too far. Your position is that the language in Cranklin and other cases that some interchange between trial counsel and the defendant and the court is expected does not include argument from the state on the merits. That is exactly my position. There are three identifying areas that the court may inquire into. One is some communication with trial counsel, some communication with the defendant, and his own knowledge of the case coupled with his own reading of the claims. Nowhere in any of the cases have I found where the state is a permissible source of information during this preliminary stage. Again, it's limited just to determine whether or not there's a colorable claim that requires appointment of counsel, so that the claims can be more fully presented with the defendant, represented by counsel, who doesn't have the conflict that the polling defender in this case would have had, had he continued to handle these ineffectiveness claims. What about the state if the court is listening to a claim by the defendant that, for example, hypothetically, Judge, my attorney didn't subpoena records from X. Couldn't the state say, Judge, I have a record. They furnished me with copies of those materials. Wouldn't that be fair for the trial court to look to the state for that kind of input? I think that that should be the subject of the evidentiary hearing. We're just looking for, at this preliminary inquiry stage, we're not looking to go deeply into the evidence and to make final factual determinations. We're looking for colorable claims of ineffective assistance of counsel. Just as the state should have no role in that, there should be some limits on the discussion with the defendant and with trial counsel, especially trial counsel, because the whole thing is you don't want trial counsel explaining away his actions. You want the defendant to be represented by counsel who can then represent the defendant in an evidentiary hearing in which all facts can come in. The judge can't say it's a final fact. You've got to determine whether the claims are ultimately meritorious or not. But at a critical hearing, defense counsel gets to explain and respond to the court, correct? I think that the trial counsel, yes, can provide factual information to the court. It shouldn't be argumentative. It shouldn't be explanatory in terms of trying to exonerate oneself. It's a very sensitive area. This is an important area that the defendant be represented by counsel that's neutral and detached and advocated for him. Let me ask you this. If we would agree with you, what do you recommend that we do? This case should be remanded with orders that counsel be appointed and the matter proceed to evidentiary hearing on any and all claims that appointed counsel deems with merit. Do you have anything further, counsel? I don't want to cut you off. Responding. Thank you. Ms. Crockett? May it please the court, Joan Crockett on behalf of the people of the State of Illinois Counsel. Before I address the main issue that we've been discussing with counsel, I just wanted to point out two things. We made a waiver argument in our brief, and I think it was misinterpreted. What we were saying was that the defendant raised 45 issues below. Only two of those issues, two of the five adopted by counsel Haskell, were raised on appeal. As to the others, we believe they had been waived. And that's what we were talking about in the waiver. I think there was a miscommunication between myself and counsel on the other side. Isn't it fair to say that the only issue is whether or not the trial court conducted a sufficient hearing or a hearing that complied with Crankle? Isn't that the only issue? Well, that's the overriding issue. And the secondary issues, if you were to presume that it was correct, are the issues that they raised about the jury waiver and the alibi witnesses. And those are manifest weight of evidence, which I had the wrong standard of review for, and I correct myself on that. But are we reviewing that, Ms. Crockett? Are we reviewing the actual facts and the allegations in that motion? I think you're reviewing, well, that's what counsel raised in his brief. I think the overriding legal issue is the one that you've been discussing of whether or not the state has a right to participate. And I'd like to take us back as to where we are in the trial process. Where we are in the trial process is post-trial motions. Now, neither we nor the defense cited to any cases that said whether the state could or could not participate in a pre-Crankle hearing. And I think the reason for that, there is no case law, is because, yes, they can. When has the state ever been precluded from post-trial motions? When? Why would we be excluded from that? Because the issue is whether or not trial counsel was ineffective. Right. Which is trial counsel, the reference in the cases to trial counsel, is the lawyer who's being accused of providing ineffective assistance of counsel. Well- Isn't that a fair interpretation? It's one interpretation. I think trial counsel is a generic term. The state are all, the state's attorneys are trial counsel. So the state gets two bites at the apple. You can argue the merits at a Crankle hearing. And then in the event that there is a finding that there is a potential issue and counsel is appointed to state, then gets to argue the merits a second time. Is that your position? It's my position, and you're presuming also that the state is only going to disagree with what the defense is arguing. Let's take the scenario where you have a really bad trial defense counsel. And let's say the guy's sleeping through the trial. And let's say the judge doesn't notice. For example, the state's putting out evidence where everybody's looking at slides. And you have one of the state's attorneys up there presenting. The jury's looking. The judge is looking. And the state's attorney, the second chair, looks over and sees defense counsel with his head down on the desk sleeping. Should the state, as officers of the court, not be allowed to come in at a pre-Crankle hearing when this defendant is saying, my counsel is sleeping through the trial? The state has an obligation to do justice. And the state participating in that scenario is fulfilling their obligation to do justice. And they're not advocating against the defendant. They're aiding the defendant in making sure he has effective assistance of counsel, correct? He's aiding the court in making a decision. But if you're the prosecutor at that point, do you wait until the Crankle hearing to let the judge know that defense counsel is sleeping? Or isn't it incumbent upon you as an officer of the court to let the judge know earlier? That may also be true. Now, tell me this. Have you seen any case law? And you said you haven't found any case law that says that the state cannot participate. Have you seen any case law where the state has participated? I personally have not. When I discussed this with my colleagues, they do recall cases. Nobody could come up with a case name. I can't. I don't think I've even had that many Crankle cases myself. I can recall one, People v. Darrell Sims. Okay. And the state was allowed to participate? No, not allowed to participate. The state asked a question from the court and just gave a neutral answer that had nothing to do with the merits and not argumentative. Well, I would say that in the two issues that were raised here on appeal, the alibi witnesses and the jury waiver, there was not an adversarial presentation by the state. As to the jury waiver, all the state said was, I never heard him. The court said, I never heard him ask for a jury waiver. And the state said, I never heard him either. And, in fact, the merits of that argument are fairly weak because the defendant himself said, well, I was like 97% sure. He never said, I said it. I insisted. He refused. So that's the merits of that argument. As to the other one with the alibi witnesses, in our brief, I detailed what both sides said. And when you read what the assistant state's attorney said, we're reading the cold record. The tonality of it to me can sound smarmy. It can sound whatever. But I don't know. You don't know. We weren't there. But what's important is what he said. All he said was, had Mr. Clement come in with these alibi witnesses, we were prepared to impeach these witnesses because they had already said something totally contrary either at the other trial or to the police. Or I don't really recall where they had made their statements. But they were ready to impeach them. This is not an inflammatory remark. It's a statement. And so when you ask, are these the only two issues that we're concerned with, in this case, yes, they are. Because while you're looking at the effect of what happened overall in this pre-crankle hearing, the only two issues that the defendant chose to raise on appeal were those two very issues. And I cannot see prejudice against the defendant by the state's participation. Is the decision to waive a jury a matter of trial strategy, as the trial court found? No, it's the defendant's choice. And shouldn't the defendant have at least had the opportunity to approach the court and have counsel say, judge, I disagree with my client, but he wishes to waive? And at that point in time, after the trial had begun, it's the trial court's discretion as to whether or not he's going to allow the waiver, correct? That's correct. Shouldn't the defendant at least have that opportunity to approach and say, judge, it's a serious case involving the murder of a six-year-old child. There's a lot of emotions. I'd rather have you decide the case. But the defendant was only 97% sure. It's not 100%. Well, the trial court was wrong when he said it's a matter of trial strategy, correct? To make the ultimate decision? Yes. Ms. Skripke, if you look at the Moore case, and Moore cites, I think it's NITS, also, and they talk about, what you're talking about here is the merits of the allegations made in the post-trial motion. And doesn't the Moore case and the NITS case both say, even if the defendant's claims may be without merit, the court still has to make the appropriate inquiry and conduct an appropriate Krankel hearing? It's not for us to determine whether or not the allegations were meritless or whether they were not. Isn't that correct? So the question here is, instead of arguing to us right now that you believe these claims are meritless, tell us why he conducted an appropriate Krankel hearing. Because what Moore lays out are suggestions. They're not hard and fast rules. This is the only three ways you can do this. The judge went further. He was following a different set of guidelines that came down in a Rule 23 opinion from this court and decided to be even more thorough. But there's nothing that the judge did that caused the defendant not to get his allegations presented. Do you think the court had it right the first time when it appointed counsel? No, because it just seemed pretty spurious. He said, well, I have these allegations. I'm appointing counsel. Never questioned anything. There was no reflection, at least from the record. You couldn't see any reflection there. Let me ask you this. Just the time. Doesn't it just the time that this took? I think it was four months that appointed counsel is working on the motions, and then four months later he files the amended motion, and the very next day the trial court removes him and says, now we're going to start over again. Doesn't that, in and of itself, shouldn't that give us pause? Why? Because the trial court had an opportunity to look at the pleading, decided, you know, I'm going to appoint counsel, and then four months later, based on Gilmore, says I'm pulling the rug out from under the defendant and we're going to have a full-blown hearing on the merits. That's really what happened, isn't it? And my reaction to that is, so the judge decided he made a mistake. And they're at a stage where they are supposed to be correcting mistakes before it gets up here. And so the judge decided, oh, well, I think I was premature. Why the judge waited four months, I don't know. Why it took the defense attorney four months to come up with five allegations, that's an even better question. What took him five months? I mean, the judge, you know, who's delaying what? Did defense counsel have copies of the transcripts of the proceedings that he was reviewing? That I don't recall. I don't know either way. I can't answer that either way. Was an alibi defense listed in discovery by the defendant? It was one of those that he listed, yes. And trial counsel, during the course of the pretrial proceedings, indicated to the court that he was exploring an alibi defense, but he was having difficulty because of the age of the case, correct? Which defense counsel? Trial counsel. Oh. Trial counsel indicated. Clement. Correct. He indicated March 10, 2008, in an affidavit. He stated that he was investigating the alibi, but it was complicated by the age of the case, and then never proceeded with an alibi defense. And it was laid out. Why? Because those alibis were never brought to him by the defendant 10 years prior. I mean, this case, I mean, well. The case wasn't brought. It wasn't brought, but he did the best he could. But he had access to the brother and the sister, and now they're coming up with completely different statements that they had made to the police when the shooting occurred. The sister's statement is different? How was the sister impeached? The sister said she dropped him off at work the morning before. And then she started talking about being in Iowa, that she could never corroborate the Iowa thing. So she was adding a different aspect to it. Her recollection was that she dropped him off, according to the affidavit, and defense counsel's explanation was simply that he had called and there were no records. Did she make a statement? I don't recall of whether or not she made a statement to the police 10 years prior or had testified at the other trial. I don't recall. Well, one of the defendant's arguments was that the state really never did fully investigate his whereabouts at the time of the murder, that that was never really done effectively by either the state or the defense. Correct? That was part of his allegations. But I still don't see how overall the hearing itself, but these questions that are pending, isn't it more pertinent to have a more investigative type of hearing when we have these outstanding questions when you have such an old case? Well, let me ask you this. In a murder case, an attorney is conducting an alibi investigation and he accepts an answer on a phone that we don't have any records. I mean, wouldn't effective assistance require at least the issuance of a subpoena to determine whether or not there are any records out there that would verify the defendant's alibi that he was, in fact, working or was employed by that company at the time? You're talking about the company said it had no records. The company over the phone, some unidentified person, said we have no records. But it wasn't just one person. I mean, he investigated locally and he investigated at the national headquarters. I mean, it wasn't just one phone call and some guy answers the phone and they said— How many phone calls was it? I think there were four. I believe there were four. The other point that I wanted to discuss about the State's participation was that, again, I don't think that we should be barred from a post-trial hearing. The time when the State is barred is at the first stage of post-conviction. And, again, what has the Supreme Court said about this? They said at the first stage the trial court cannot dismiss a post-conviction petition based on time limits. And they say why? And they say because if it seems like there's some merit and the case should go up to the second stage, it's the belief that as officers of the court the State will look at the petition at the second stage, see a meritorious argument presented or petition from a defendant, and forego making the argument that the petition has been timed out. That's the type of thing when the State is excluded, when you've already passed all of this. But at the point where the State—we are at post-hearing—I mean post-trial, where there are hearings that are going on that are supposed to clean up the record and to make sure that everything has been tied up, this is the time to let the State participate. The State also acts in this manner. It can act in a manner, for example, if a post-sentencing motion is late and the State recognizes that there has been an error in the sentencing, they can go with the defendant into the court and revest the court with jurisdiction by arguing against their own self-interest. That's when revestment occurs, and that's when the State again should not be kept silent. And the other point I want to bring out is what if in this case something had happened to the trial judge? I have another case pending where the judge died during the post-trial motions. We're talking about the Sixth Amendment right to effective assistance of counsel, not collateral review. Right. What should take place at a crankle hearing to make a determination as to whether or not the case will go forward on the merits? Correct. But whether or not a crankle hearing is a full hearing, I don't understand how the State can be silenced at a post-trial hearing. The State's opportunity to be an advocate is at the hearing on the post-trial motions. I'm saying the State isn't there to be an advocate. Do you have any authority that says that? Is there any authority? Is there a single case that says the State can fully participate in a crankle hearing by arguing the merits or against the merits of the defendant's pro se claims? I think the only—I don't have a case. You're analogizing. I'm analogizing that this is post-trial. We cannot be shut out of the process. Okay. Thank you. Thank you. Mr. Kirken. Would you answer the opposite question that Justice Burkett just asked Ms. Kripke? And the question would be why should the State be barred from a post-trial hearing? I'm not saying— This post-trial hearing in particular. What you have here is an adversarial hearing where the defendant is not represented by counsel. He is proceeding pro se with—as I read the record, he's literally sitting at counsel table with Mr. Clement defending his actions on one side and the State on the other side acting as an advocate. That's just fundamentally unfair where the defendant is put in that position of having to advocate on his own behalf against two different interested parties here who want this resolved in a fashion that's most favorable to them. Wouldn't that be the case in every Krinkle hearing where the defendant would be sitting there, trial counsel would be sitting there, and the State would be sitting there? Maybe the State wouldn't be talking at every Krinkle hearing, but they would certainly be there, correct? Sure. Absolutely, they could be there. But there's no role for them in this initial limited inquiry as to whether there are colorable claims. The question is why and what authority do you have that says that there's no role for them? I'm not aware of any case that says they can't participate. There are a number of cases that go through the Blackwater— excuse me, Blackletter law of Krinkle hearings that says there are three sources of information the trial court may rely on. And I think you can read that to be exclusive. Some limited communication with the trial counsel, defense counsel. Some limited discussion with the defendant and his own knowledge of the case and review of the plea. Not the State's knowledge and the State's arguments? I would say no. I think that's a role for the State at an evidentiary hearing. What if the State's argument that the participation here, if you look at the State's participation, it really doesn't change anything? Because if we—this has been over review, correct? If we just look at what defense counsel said, we could determine that the trial court ultimately got it right. Could we do that? No, I would respectfully disagree. I think that if you go back and read the three days of Krinkle proceedings here, you'll see that the State was more than just a supplier of factual information. The State was an advocate here against a pro se defendant. Here's what happened. Let's go back to the day that Mr. Haskell's appointment was rescinded, October 28, 2009. The defendant was written back from the Department of Corrections for a hearing on that day, believing that he had counsel, that he was represented by counsel, and he was provided with a copy of counsel's amended plea finding merit on five of his points. He walks into the courtroom, and Judge Sheldon says, you know what, I got this Gilmore decision. You know, the appellate court wants a preliminary inquiry. I'm going to give them a preliminary inquiry. Mr. Downs, come up and sit at counsel's table, and you're on. Present your case. At that point, the defendant says, can I have my handcuffs removed, and can I get a copy of my motion? Yes. Go. Number one, what's your claim? He reads his claim off his motion. Number two, three and four are his alibi claims. Within five minutes of being told that his counsel's yanked away from him, he's presenting his alibi claim, his claim that he received ineffective assistance on this whole question of alibi. You've got Mr. Clement arguing against him, saying here's what I did. You've got the state offering its input, and you've got a defendant sitting there with no counsel at all against two different advocates. What did the court have to find at that point in order to proceed to a hearing? The court had to find that the claim presented a culpable claim of ineffective assistance of counsel. I mean, in my brief, I cite those cases that define what a culpable claim is. A claim lacks merit if it is conclusory. They had to show initial possible neglect. Possible neglect. The court had to find possible neglect of the case. And, you know, the interchange between Ms. Kripke and Justice Roquet, you know, these factual questions shows the need for an evidentiary hearing. And let me go back to a point. This is the point in the question of whether the state was merely supplying factual information or was an advocate. The defendant essentially just read his motion and went through his claims, and the court considered them and moved on to the next one. They got all the way to the end, and the court gave the participants an opportunity to make a conclusory statement. And the state said don't appoint counsel here. The state was permitted to make a summation and advocate against finding possible neglect of counsel in this case. That exceeds the permissible scope of a critical preliminary inquiry here. Thank you. Do you want to wrap up for just one minute? Okay. You know, I just have one more point here. There seemed to be some question of whether the trial court rescinded Mr. Haskell's appointment because it thought it might have been an error when it found that's belied by the record. That's what? That is not supported by the record. In fact, the record shows otherwise. On September 2nd, Mr. Haskell, after his appointment, came to the court and said, I want to clarify what my role is here. Is my role to investigate these claims and assist the court in determining whether there are colorable claims here and possible neglect, or has the court already found that and appointed me to represent him in evidentiary proceedings? The court responded that it had reviewed the allegations and some could be construed as neglect. Mr. Haskell took that and put that in his motion and said, you know, I asked, and here is what the court told me my role is. And that's on page, supplemental record, page 14 of the record. So Mr. Haskell's appointment was not rescinded because the court felt it made an error. It was rescinded because it got Gilmour, which he interpreted as requiring a preliminary hearing prior to the appointment of counsel. Thank you, Your Honor. Thank you, Mr. Wood. Folks, the court will be in recess for a few minutes. This case will be taken under advisement and an order will be issued in due course. Thank you.